UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN SMEGO,<br><br>    Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC. and EQUIFAX INFORMATION SERVICES,<br><br>    Defendants. | CIVIL ACTION 1:15-cv-07864<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

NOW COMES the Plaintiff, BRIAN SMEGO ("Mr. Smego" or "Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, SELECT PORTFOLIO SERVICING, INC. ("SPS") and EQUIFAX INFORMATION SERVICES, INC. ("Equifax"), (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and Defendants' conduct harmed Plaintiff in this District.

**PARTIES**

4. Plaintiff Brian Smego is a consumer and a natural person over 18-years-of-age who at all times relevant to this complaint owned and resided at the property located at 142 North Caroline Avenue, Elmhurst, Illinois 60126 ("subject property").

5. Defendant Select Portfolio Servicing, Inc. ("SPS") is a Utah corporation with its principal place of business at 3815 South West Temple, Salt Lake City, Utah 84115. SPS is a foreign company and a creditor, lender, debt collector, furnisher of credit information, and servicer of mortgage loans across the country, including the State of Illinois.

6. Defendant Equifax Information Services, Inc. ("Equifax") is a Delaware corporation with its principal place of business at 1550 Peachtree St. NW, Atlanta, Georgia 30309. Equifax is in the business of compiling and maintaining consumer files for the purposes of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

**BANKRUPTCY CASE**

7. On July 1, 2006, Mr. Smego executed a mortgage loan in the amount of $519,999.00 ("subject loan" or "subject debt") in favor of Chase Mortgage ("Chase") secured by the subject property.

8. After Mr. Smego defaulted on the subject loan in November 2013, Chase transferred the subject loan to SPS.

9. On June 5, 2014, Mr. Smego and his then wife, Melanie Smego, filed a Joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 14-21258 ("bankruptcy"). *See* Exhibit A, attached hereto and incorporated herein by reference.

10. Schedule D of the bankruptcy petition listed SPS as the creditor of the subject loan in the amount of $519,999.00, secured by the subject property. *See* Exhibit B, attached hereto and incorporated herein by reference.

11. At all times relevant, prior to and during Mr. Smego's bankruptcy and bankruptcy discharge, SPS owned and serviced the subject loan.

12. Also on June 5, 2015, Mr. Smego filed his Chapter 13 Plan ("Plan"). *See* Exhibit C, attached hereto and incorporated herein by reference.

13. Mr. Smego's Plan proposed to treat the claim of SPS as follows:

> "Debtors are surrendering the real property located at 142 N. Caroline, Elmhurst, Illinois to Select Portfolio Servicing and JPMorgan Chase in full satisfaction of their claims." *Id.* at p. 5.

14. On June 6, 2014, the Bankruptcy Noticing Center ("BNC") served all of Plaintiff's creditors, including SPS, with copies of Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines and Plaintiff's Plan. *See* Exhibits D and E, attached hereto and incorporated herein by reference.

15. On July 2, 2014, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from SPS appeared at the 341 Meeting.

16. On October 3, 2014, the Chapter 13 Plan was confirmed. *See* Exhibit F, attached hereto and incorporated herein by reference.

17. On March 19, 2015, the Bankruptcy Court entered an Order of Discharge in Mr. Smego's case discharging all dischargeable debts, including the subject loan. *See* Exhibit G, attached hereto and incorporated herein by reference.

3

18. The Order of Discharge expressly "prohibits any attempt to collect from the debtor a debt that has been discharged..., or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

19. On March 19, 2015, the BNC served all of Plaintiff's creditors, including SPS, with the Order of Discharge. *See* Exhibit H, attached hereto and incorporated herein by reference.

20. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by SPS or any if its successors and/or assigns.

21. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan, and on June 4, 2015, Plaintiff's bankruptcy case closed.

22. Plaintiff's personal liability on the subject loan was extinguished by virtue of the bankruptcy discharge, thus dissolving and terminating the business relationship with SPS and its successors and/or assigns.

23. SPS sent Plaintiff various notices and statements prior to and after the bankruptcy filing.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EQUIFAX

   a. **Plaintiff's Dispute Letter to Equifax.**

24. On June 3, 2015, after the subject debt was discharged, Plaintiff mailed via certified mail, return-receipt requested, a written credit dispute letter ("dispute letter") to Equifax, requesting that his credit file be updated to reflect the zero balance and discharged status of *all* accounts discharged in his Chapter 13 bankruptcy. *See* Exhibit I, attached hereto and incorporated herein by reference.

25. Plaintiff's dispute letter to Equifax stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on April 18, 2014;"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c. "Report a current balance of '0'" on all discharged accounts;
   d. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System with respect to this written notice"; and
   e. "I request that you forward this letter, and enclosures, to each of the creditors listed in my schedules." *Id.*

   b. **Equifax's Response to Plaintiff's Dispute Letter.**

26. On July 2, 2015, Equifax returned Plaintiff's dispute results. Although a Chase account was corrected, the SPS account had not been corrected to accurately reflect the proper status of the discharged debt. *See* Exhibit J, attached hereto and incorporated herein by reference.

27. Equifax responded to Plaintiff's dispute by stating that the SPS account's status is being reported correctly when in fact it was not. *Id.*

28. The trade line for the SPS account was still reporting a "Balance Amount" of $519,999.00, an "Amount Past Due" of $73,277.00, and a "Scheduled Payment Amount" of $3,196.00. *Id.*

29. The SPS trade line inaccurately reported that Plaintiff was delinquent and owed the monthly amount when Plaintiff was no longer liable on the subject loan.

## COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST SPS)

30. Plaintiff repeats and realleges the preceding paragraphs as though more fully set forth herein.

31. Plaintiff is a consumer as defined by 15 U.S.C. §§1681a(c).

32. SPS is a "person" as defined by 15 U.S.C. §1681a(b).

5

33. SPS is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

   **a. SPS's Failure to Conduct a Reasonable Investigation Under § 1681s-2(b)(1).**

34. SPS violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving multiple requests for an investigation and reinvestigation from Equifax and Plaintiff.

35. SPS violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Plaintiff and Equifax.

36. Had SPS reviewed the information provided by Plaintiff and Equifax, it would have corrected the inaccurate designation of the subject loan to Equifax; instead SPS wrongfully and erroneously confirmed its inaccurate and incomplete reporting without conducting a reasonable investigation.

37. SPS violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's files.

38. SPS violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's dispute with Equifax.

39. SPS violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate reporting with respect to the subject debt.

40. SPS failed to conduct a reasonable reinvestigation of its reporting of the subject debt, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax and Plaintiff under 15 U.S.C. §1681i(a)(1).

41. SPS violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

42. Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, SPS did not correct the errors or trade lines to report accurately and completely. Instead, SPS wrongfully and willfully furnished and re-furnished false and erroneous information that the subject debt was delinquent.

43. A reasonable investigation by SPS would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit file.

44. Had SPS taken steps to investigate Plaintiff's valid dispute and Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in his requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily ascertainable.

45. By deviating from the standards established by the banking industry and the FCRA, SPS acted with reckless disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax and Plaintiff directly.

46. SPS willfully, knowingly, and negligently confirmed and reported the inaccurate information on Plaintiff's credit reports with Equifax, rendering SPS liable for punitive damages. 15 U.S.C. §1681n.

WHEREFORE, Plaintiff BRIAN SMEGO requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

    c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations;

    d.  Award Plaintiff statutory damages of $1,000.00 for violations of the FCRA, pursuant to 15 U.S.C. §1681n;

    e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

    f.  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

    g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EQUIFAX)

47. Plaintiff repeats and realleges the preceding paragraphs as though more fully set forth herein.

48. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

49. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

50. Plaintiff provided Equifax with all relevant information and documentation in his request for investigation to reflect that he obtained a discharge and was no longer liable for the subject loan.

51. Equifax prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loan with an amount past due, an owed balance, and a scheduled payment amount, when in fact he had received a bankruptcy discharge and owed no past due amounts, no balances, and no scheduled payment amounts on the subject loan.

52. A simple review of the documents submitted by Plaintiff would have confirmed that Plalintiff had filed bankruptcy, no longer owed a balance, no longer had a scheduled payment amount, and was not past due from the time of his bankruptcy filing in June 2014.

53. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiff's credit files.

54. Had Equifax taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that the subject loan was discharged in bankruptcy.

55. Instead, Equifax sent Plaintiff a report indicating that the SPS trade line was reporting correctly, at the same time that it willfully continued to report the inaccurate information.

56. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to record all relevant information that it received from SPS and Plaintiff with regard to Plaintiff's credit report and the subject debt.

57. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and SPS with regard to the subject debt.

58. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

59. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from SPS that the information was complete and accurate.

60. Since *all* of Plaintiff's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," Equifax should have investigated why the SPS trade line still reported as "past due," "due and owing," and "a scheduled payment amount."

61. Moreover, after Plaintiff's written dispute, Equifax had specific information related to Plaintiff's bankruptcy case and discharge order, which included the subject loan.

62. Equifax knew that the inaccurate designation of the subject loan on Plaintiff's credit report under the SPS trade line as delinquent, in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on his credit worthiness and ability to receive a "fresh start" after bankruptcy.

63. The FCRA requires that the credit reporting industry put procedures and systems in place to promote accurate credit reporting.

64. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duties to report accurate and complete consumer credit information.

65. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information is accurate.

66. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting his credit information.

67. Equifax acted reprehensively and carelessly by reporting and re-reporting innocent consumers as continually delinquent, in default, and owing a high past due balance on the SPS account after being discharged in bankruptcy.

68. As a result of the conduct, actions, and inaction of Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration

and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his dispute, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials.

69. Equifax's conduct was willful and negligent, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

WHEREFORE, Plaintiff BRIAN SMEGO requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion of all adverse credit reporting;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**
Dated: September 3, 2015

> Respectfully Submitted,
> */s/ Nick Wooten*
> Nick Wooten
> Counsel for Plaintiff
> Sulaiman Law Group, Ltd. *of Counsel*
> 900 Jorie Blvd., Suite 150
> Oak Brook, IL 60523
> Tel. (630) 575-8181
> Fax (630) 575-8188
> Email:  nick@nickwooten.com